Argued and submitted October 17, 1996, affirmed July 2, 1997

Clifford CONRADI
and Patricia Conradi,
*Appellants,*

*v.*

Patrick S. PERKINS,
*Respondent.*

(95-CV-0148; CA A91067)

941 P2d 1083

Clayton C. Patrick argued the cause for appellants. With him on the briefs was Patrick and Meadowbrook.

Keith Rodman argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds, Judge, and Joseph, Senior Judge.*

---

* Joseph, S. J., *vice* Armstrong, J.

JOSEPH, S. J.

### JOSEPH, S. J.

Plaintiffs appeal from judgments dismissing their forcible entry and detainer action and awarding defendant attorney fees.[1]

Sidney and Opal Perkins bought 80 acres in 1949; later they sold 40 acres of the tract. Opal had two daughters from a former marriage, Judith and Joan, and she and Sidney had two sons, one of whom is the defendant. In 1957, when Joan was planning to marry John Snyder, Opal and Sidney purportedly made them a wedding gift of approximately five acres of the property. John testified that he and Sidney eventually identified the property by walking the boundaries and visually determining three of its corners in 1964. The property was not surveyed, and no deed or other writing was ever executed. After their wedding, the Snyders built a road into the area and erected a house. While they lived there, they had four children. For about a year during that time they lived in California while John went to school and then returned to the house. In 1964 or 1965, before the birth of their fifth child, they moved to another house some miles away. After they moved, they permitted others to occupy the house at different times. In 1972, defendant, Joan's half brother, who had served in Viet Nam, moved into the house; in 1973, the Snyders purportedly gave him the five acres. Again, there was no deed or other writing or survey. Sidney was still living when defendant first occupied the property, and he and Opal knew of his moving in.

Plaintiff Clifford Conradi had been married to Opal's sister. After the sister's and Sidney's deaths, Clifford and Opal married in 1987 and lived on Opal's property, where he caused a new home to be built, which he paid for. In 1988, Opal made and recorded a conveyance by the entireties, describing the whole property, to herself and Clifford. The children knew that. In 1992, when she was dying of cancer, Opal made a will, leaving everything to Clifford. Judith and Joan witnessed the will but were not shown its provisions. However, they knew of their mother's action, as did the other

---

[1] Plaintiffs raise no issue involving the award of attorney fees, but if they prevail on appeal the fee judgment must also be reversed.

children. Shortly thereafter Opal died. A few months later, Clifford executed and recorded a deed to the 40 acres, creating a tenancy in common with plaintiff Patricia.

After he and Patricia married, he executed and recorded another deed in their names as tenants by the entireties. The children also knew of those actions. At no time did the Snyders or defendant challenge them or assert any claim in their own rights. Only after this action was begun did defendant have a survey made. Neither the Snyders nor defendant ever directly paid real property taxes, although small amounts of money furnished by them from time to time may have helped Sidney and Opal to pay them.

Plaintiffs gave defendant a notice to quit the premises and, when he refused, they brought this action. Defendant asserted title to the property by adverse possession and by gift. Plaintiffs replied to those affirmative defenses by pleading that defendant was estopped to assert them. Although there is some ambiguity in the record about just when the motion was formally filed, before the trial began defendant moved to strike the estoppel defense. Although defendant requested a jury trial, the trial court refused on the ground that the matters to be tried were all equitable and deferred ruling on the motion until the parties had presented their evidence.

The trial court made written findings of fact and conclusions of law. The findings are the basis generally of the foregoing statement of facts. The court first held that all of the elements of adverse possession had been proven but did not say by whom. It then held that the Snyders had received a parol gift of the property, had thereafter taken possession and made valuable and permanent improvements and, therefore, "have an enforceable interest in and title to that parcel," which they had orally given to defendant. The court also held that the original gift to the Snyders started the running of the 10-year period of limitation for adverse possession, which had ripened into a title in defendant before this action was begun.

Why the court felt it necessary to find both a valid parol gift of the property to the Snyders and that defendant

had acquired title by adverse possession is not clear. Apparently, the court believed that, because defendant himself had made no valuable and permanent improvements during his possession, the parol gift to him by the Snyders could not be sustained. However, if the Snyders had acquired a title by the gift from Sidney and Opal, they could transfer their title to defendant—and they have not challenged their own gift to him. If the Snyders had title to the tract, adverse possession by defendant against plaintiffs' claimed title is, at best, a moot point.

The court also allowed defendant's motion to strike plaintiffs' estoppel allegations, saying, "Estoppel was not properly [pled] * * *, but if it had been, was not established by the evidence." Again, that is a two-part conclusion, and the validity of either moots the other.

The trial dealt with only the affirmative defenses and the estoppel issue. The findings and conclusions left the FED action technically unresolved. In a post-trial letter, the court said, "The FED is still pending. The rulings on the affirmative defenses make it impossible for [plaintiffs] to prove [that they are] entitled to possession." On defendant's motion, the court entered a judgment in his favor on the FED action; subsequently, defendant obtained a judgment for attorney fees and costs. This appeal followed.

We first note that plaintiffs' appeal is based in substantial measure on the propositions that a parol gift of real property cannot be effective to transfer a title but can only serve to start the running of the period of limitation and that proof of the elements of adverse possession is still necessary to sustain the donee's title. They rely on *Parker v. Kelsey*, 82 Or 334, 161 P 694 (1916), but that case stands only for the proposition that "a parol gift * * * is sufficient to inaugurate adverse possession." 82 Or at 343. Oregon cases have recognized that oral agreements for the use or transfer of real property can be enforced, despite the Statute of Frauds, if the donee enters into possession and makes valuable improvements. *Thayer v. Thayer*, 69 Or 138, 138 P 478 (1914); *see also Luckey, et ux v. Deatsman*, 217 Or 628, 632, 343 P2d 723 (1959). That rule is an application of the doctrine that part performance in reasonable reliance on the promisor's actions

can take an agreement from the prohibition of the statute. There is no difference in principle between saying that possession taken and valuable improvements made in reliance on an oral promise can avoid the statute and saying that a parol gift followed by taking and making valuable improvements can be a completed gift, despite the statute. Although plaintiffs denigrate the value of what the Snyders did to improve the property, we agree with the trial court that they did make valuable, if perhaps modest, improvements after they took possession. The trial court found that Sidney and Opal intended to give the five-acre property to the Snyders in 1957 and, implicitly, that the Snyders relied on that gift in taking possession and improving the property. On our review of the record, we agree that the gift was completed.

Unless defendant was estopped to assert the gift to the Snyders, the property belonged to them when they gave it to defendant.[2] Plaintiffs' reply alleges that the series of actions beginning with Opal's conveying the 40 acres to herself and Clifford jointly and ending with Clifford's conveyance to himself and Patricia, all done with defendant's knowledge, gave rise to a duty of defendant and others to assert their interest, that they remained silent, that plaintiffs relied on that silence and that, therefore, defendant is estopped to assert a title by parol gift. Completely missing is any allegation of ignorance of the truth by plaintiffs or either of them or that the silence was intended to induce Opal's or plaintiffs' reliance in making the various deeds or the will. It is, at least, doubtful that the reply adequately pled an estoppel. *See Hess v. Seeger*, 55 Or App 746, 760, 641 P2d 23, *rev den* 293 Or 103 (1982), and cases cited therein.

■ We need not decide this case on the pleading issue. The trial court delayed ruling on the motion to strike until it had heard all of the parties' evidence. It then ruled that the pleading should be stricken but that, whether properly pleaded or not, estoppel was not proved. On review we conclude that, in the light of his involvement with the family and

---

[2] The record does not contain any evidence challenging the acts and intentions of the Snyders in giving their interest to defendant. In their briefs, plaintiffs argue that, so far as the parol gift element of the case is involved, defendant's claim is only as good as the Snyders' claim. That is correct.

his knowledge of Opal's intentions as shown in the evidence, Clifford must have known of the gift to the Snyders and their gift to defendant. Therefore, he did not prove that he acted in reasonable reliance on anyone's failure to assert a claim to the property. What he did rely on was the absence of a record title in the Snyders or defendant. In the circumstances that was not reasonable. The estoppel claim fails.

It is not necessary to decide any of the other issues presented.

Affirmed.